(582 P 2d 742)
No. 49,105

GANO FARMS, INC., *Appellant,* v. Estate of Donald D. Kleweno, Deceased, *Appellee.*

Petition for review denied September 13, 1978.

Opinion filed August 11, 1978.

*Allen Shelton,* of Clark and Shelton, of Hill City, for the appellant.

No appearance for the appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

FOTH, C.J.: This is an appeal by a creditor from the denial of its claim against a decedent's estate because it was barred by the nonclaim statute, K.S.A. 59-2239. The issue raised is whether a creditor may constitutionally be barred when the only notice given of the appointment of a decedent's personal representative is publication notice in accordance with K.S.A. 59-2236.

The creditor, Gano Farms, Inc., has its principal place of business in Graham County. It sold merchandise to Donald D. Kleweno, a resident of Ness County. When Kleweno died, administration of his estate was commenced in the probate court of Ness County, and notice to creditors was published in Ness County. Gano's managers did not learn of Kleweno's death in time to make a timely claim and Gano filed its claim more than six months after the first publication. In probate court the claim was disallowed as too late. On appeal to the district court summary judgment was rendered in favor of the estate on the following stipulation:

"(1) That the only Notice given to creditors of the decedent, Donald D. Kleweno, was notice by publication as provided in K.S.A. 59-2236 and K.S.A. 59-2239.

"(2) That no effort was made to locate and notify said creditors, other than said Notice by publication.

"(3) That the Petition for Allowance of Demand of Gano Farms, Inc. was not exhibited within six (6) months of the first published Notice to Creditors.

"(4) That the officers of Gano Farms, Inc. reside in Graham County, Kansas,

and they do not subscribe to any Ness County newspapers and did not learn of the death of the said Donald D. Kleweno until after the expiration of said six (6) month period.

"(5) That Plaintiff's said Petition for Allowance of Demand was heard by the Probate Court of Ness County, Kansas on November 5, 1976, and Plaintiff's demand was held barred under K.S.A. 59-2239; that Plaintiff timely and duly perfected an appeal from the order disallowing such demand, to the District Court of Ness County, Kansas."

On appeal to this court Gano contends that to bar its claim with only publication notice to it denies it both due process of law and the equal protection of the laws. It urges us to hold that K.S.A. 59-2236, which requires no more than publication notice to creditors, is unconstitutional on both grounds.

Gano relies on the line of cases having its source in *Mullane v. Central Hanover B. & T. Co.,* 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652 (1950). The line includes: *New York v. New York, N. H. & H. R. Co.,* 344 U.S. 293, 97 L.Ed. 333, 73 S.Ct. 299 (1953); *Walker v. Hutchinson City,* 352 U.S. 112, 1 L.Ed.2d 178, 77 S.Ct. 200 (1956); *Schroeder v. City of New York,* 371 U.S. 208, 9 L.Ed.2d 255, 83 S.Ct. 279, 89 A.L.R.2d 1398 (1962); *Pierce v. Board of County Commissioners,* 200 Kan. 74, 434 P.2d 858 (1967); *Chapin v. Aylward,* 204 Kan. 448, 464 P.2d 177 (1970); *In re Estate of Barnes,* 212 Kan. 502, 512 P.2d 387 (1973) and *Weaver v. Frazee,* 219 Kan. 42, 547 P.2d 1005 (1976).

The teaching of those cases is that when the state proposes to take judicial action which will deprive any person of a property right it must give that person notice of its intention to act, and further, that the notice given must be reasonably calculated to reach the attention of the person whose property will be affected. To that end service by publication alone is not sufficient where the party's whereabouts are known or reasonably ascertainable. In such a case service by mail is at least required, in addition to the publication required by statute. The cases are applications of the twin principles that (a) when the state proposes to "deprive any person of life, liberty, or property" it must under the Fourteenth Amendment afford "due process of law," and (b) notice and an opportunity to be heard are essential elements of due process.

The problem with applying the doctrine of those cases to the notice required under the nonclaim statute arises from the different function of the notices, and from the difference in the

nature of the right being affected. In each of the cases cited above the person to be notified was, in effect, made an actual party to the litigation by the notice, and the judgment of the court operated directly on that person's property.

Thus, in *Mullane* the parties served by publication were beneficiaries of the trust in which the bank had filed an accounting; once the account was settled their rights were forever adjudicated. In *New York* the party was a lienholder whose lien on real estate would be barred. In *Walker* it was a landowner whose property was being condemned. In *Schroeder* it was a landholder whose interest in a flowing stream was being condemned. In *Pierce* it was the owner of land being sold at a tax foreclosure sale. In *Chapin* it was the owner of a mineral interest being subjected to the same fate. In *Barnes* it was an heir whose interest in an estate would be barred by admission of a will to probate. And in *Weaver* it was the owner of an interest in land which was being sold on execution under an order of attachment. In each case the effect sought to be given to the notice, at least as to the property right involved, was the same as if the party had been personally served and made a party to the proceeding, and in each a specific, identifiable property right was the subject of the court's order.

The notice under the nonclaim statute, on the other hand, does not make a creditor a party to the proceeding, but merely notifies him that he may become one if he wishes. It does no more than put into operation a special statute of limitations. It is true that the creditor's claim will be barred if not presented before the statute runs, but that is true of any statute of limitations. No order is entered which specifically bars the claim unless, as here, the creditor seeks to enforce the claim after the statute has run.

The characterization of the nonclaim statute as a special statute of limitations is found throughout the Kansas cases. See, *In re Estate of Dumback,* 154 Kan. 501, 119 P.2d 476 (1941); *Hutchinson v. Pihlblad,* 157 Kan. 392, 139 P.2d 835 (1943); *Jardon v. Price,* 163 Kan. 294, 297, 181 P.2d 469 (1947); *In re Estate of Bowman,* 172 Kan. 17, 238 P.2d 486 (1951); *In re Estate of Brasfield,* 168 Kan. 376, Syl. 5, 214 P.2d 305 (1950); *In re Estate of Wood,* 198 Kan. 313, Syl. 2, 424 P.2d 528 (1967).

Other jurisdictions take the same view. *E.g., Storm v. Cluck,* 168 Neb. 13, 95 N.W.2d 161 (1959); *New York Merch. Co. v. Stout,* 43 Wash. 2d 825 (1953); *Rabin v. Krogsdale,* 346 S.W.2d 58

(Mo. 1961); *Kuzma, Admrx. v. Peoples Trust & Sav. Bank,* 132 Ind. App. 176 (1961).

The Washington court was squarely faced with the due process contention made by Gano in this case. It said:

"In support of its contention that [the nonclaim statute] does not accord due process of law in that it goes no further than to require publication of notice to creditors in a newspaper, appellant cites *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652. That case has no application to such a statute as [ours]. Its doctrine was applied to a case where *property rights were being brought before a court for adjudication* such as those of beneficiaries under trusts, and where the addresses of such beneficiaries were known to the trustee. The basis of the decision is that notice by publication alone is not sufficient to accord due process under such circumstances.

"Appellant is the victim of its own fault and nonaction by its failure to comply with a mandatory statute of nonclaim, for which the courts can give it no relief." (43 Wash. 2d at 827-8. Emphasis added.)

In *Kuzma* the Indiana court observed that:

" 'The constitutional prohibitions against the taking of property without due process of law forbid the legislature from taking away a vested right, and similarly forbid any legislative attempt to take away immediately and completely all legal means for the enforcement of said right, as that would amount to a subversion of the right itself.'

"The provisions of [the nonclaim statute] do not take away any vested right, but merely impose as a condition precedent the appointment of an administrator within one (1) year after death before such a claim as the one before us here may be enforced." (p. 183.)

The Nebraska Supreme Court explained in *Storm v. Cluck,* supra, that nonclaim statutes are special statutes of limitations that are more rigorously enforced than general statutes of limitations. The defense of nonclaim generally cannot be waived by the administrator, and the statute runs regardless of the minority or incompetency of the claimant. The court there reasoned that "it would be novel indeed if it were argued that a possible defendant in a tort action is required, in the absence of statute, to notify a possible plaintiff in the action that in 4 years his claim will be barred by the statute of limitations governing tort claims. Obviously, due process of law does not require notice in such a case. By analogy, notice is no more required in connection with the running of a statute of nonclaim, which an administrator cannot waive as a defense, than it is for a general statute of limitations which may generally be waived or used as a defense." (pp. 21-22.)

While the latter two cases may be distinguished on their facts,

they do point out that, by analogy to a general statute of limitations, notice to a creditor that it has commenced to run is not required at all. Under that reasoning, even publication notice is not constitutionally necessary, and may be regarded as a legislative act of grace.

That view is reinforced by considering the plight of a creditor whose debtor dies and no administration is begun. It is clear that under K.S.A. 59-2239 such a creditor must take the initiative by securing the appointment of an administrator and presenting his claim—both within the time prescribed by statute—or he will be barred. See, *In re Estate of Dumback*, supra; *Jardon v. Price*, supra at Syl. 1; *In re Estate of Jordon*, 180 Kan. 581, 306 P.2d 135 (1957). And *cf.*, *In re Estate of Brasfield*, supra; *In re Estate of Wright*, 170 Kan. 400, 227 P.2d 131 (1951).

No one would suggest, we suppose, that the heirs must seek out the decedent's creditors and notify them of the death, or that their failure to do so deprives the creditor of his property without due process of law by the running of the statute of limitations, even though he may not have been aware that it was running.

The same sort of reasoning applies to Gano's equal protection claim. An heir is entitled to more than publication notice. *In re Estate of Barnes*, supra. But an heir has a totally different kind of interest from that of a creditor. A decree admitting a will to probate cuts off his right of inheritance and deprives him of property which would otherwise pass to him by operation of law. Hence he is a necessary party to the suit, and jurisdiction over him must be obtained because he will be bound by the judgment. A creditor, on the other hand, is not a party to the proceedings unless and until he chooses to become one. He is not bound by any order of the court until his claim is submitted and passed upon. True, his claim may become barred, but that would be because of the lapse of time and the operation of the (nonclaim) statute of limitations, and not because of any judgment of the court operating directly on his claim. Apart from the practical problems involved in searching out creditors, as opposed to heirs, we think the difference between the interests of the two classes is sufficient to justify the disparate legislative treatment.

We would observe in this connection that the holder of a will giving him the entire estate, who is not also an heir, may be similarly cut off by the lapse of time. Such an inchoate benefi-

ciary who fails to learn of the death of his testator is barred in nine months from offering the will (K.S.A. 59-617), and thereby loses his right to claim the estate. Such a "beneficiary," however, is not entitled to notice of the death of his testator or of the institution of probate or administration proceedings. Like the creditor, he has no vested interest in the decedent's estate and, like the creditor, it behooves him to make periodic inquiry after the health of his would-be benefactor.

We conclude that neither the due process nor the equal protection clause requires notice to a creditor that a decedent's estate is being administered, and that the notice provisions of K.S.A. 59-2236 are constitutional. Since Gano's claim was barred by K.S.A. 59-2239, the trial court properly rendered summary judgment in favor of the estate.

Affirmed.